UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOHN WAYNE ZIBOLSKY,

        Plaintiff,

    v.                                Case No. 17-cv-1204-pp

SUE DEHAAN,[1]

        Defendant.

---

**ORDER DISMISSING *HABEAS* PETITION (DKT. NO. 1), DISMISSING CASE AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY**

---

On September 6, 2017, the petitioner, who is on active community supervision and is representing himself, filed a petition for writ of *habeas corpus* under 28 U.S.C. §2254 challenging his 2013 conviction in Brown County Circuit Court for operating while intoxicated and taking and driving a vehicle without consent. Dkt. No. 1. On July 28, 2020, the court granted the petitioner's motion to proceed without prepaying the filing fee, screened the petition under Rule 4 of the Rules Governing Section 2254 Cases, allowed the petitioner to proceed on two of his grounds for relief, ordered the respondent to answer or otherwise respond and set a briefing schedule. Dkt. No. 21. On

---

[1] Rule 2 of the Rules Governing Section 2254 Petitions requires a petitioner incarcerated under a state court judgment to name as respondent the official who has custody of the petitioner. The petitioner is released on active community supervision. When he filed the petition, he was at the Wisconsin Resource Center. The court has changed the caption to reflect the current director of that facility.

1

October 22, 2020, the respondent answered the petition. The petitioner has not filed a brief in support of the petition.

This order denies the petition and dismisses the case.

## I.    Background

### A.    Underlying State Court Case

#### 1.    *Factual background*

The Wisconsin Court of Appeals explained the facts that gave rise to the petitioner's convictions:

> According to the complaint, a citizen at a gas station encountered a man, eventually identified as [the petitioner], who tried to get into her locked vehicle. [The petitioner] said he worked at the gas station, and asked a number of unusual questions, like how many gas tanks her vehicle had. A store clerk intervened and [the petitioner] walked away, stating that he had mistaken the vehicle for his brother's vehicle. The citizen observed [the petitioner] as he walked about fifty yards away and entered the passenger compartment of another vehicle in a restaurant parking lot. The observer entered the restaurant to warn the patrons about [the petitioner]. [The petitioner] exited the vehicle and entered a van parked at a nearby Kwik Trip. The driver of the van approached the vehicle with groceries and opened a passenger door. Upon seeing [the petitioner] in the driver's seat, the van owner yelled at [the petitioner] and went back to the Kwik Trip to call police. [The petitioner] started the vehicle and, after some fumbling, put the van in gear and squealed the tires.
>
> The citizen who followed the man to the Kwik Trip then saw [the petitioner] drive between the gas station and its car wash facility. The van jumped a curb and collided with the building. The van made another turn and then collided with the gas station building. The citizen heard squealing tires as the van drove around the building reappearing and striking a different section of the Kwik Trip. The van also struck another van and ultimately collided with a concrete pillar, immobilizing the vehicle. By this time other bystanders approached the scene and attempted to detain [the petitioner] as he got out of the van. A Kwik Trip employee followed the man as he walked away, and police soon arrived to question [the petitioner].

The responding officers detected a strong smell of intoxicants on [the petitioner] and noticed his slurred speech, extremely glossy red eyes and difficulty maintaining his balance. A preliminary breath test showed a blood alcohol concentration of .122%. A subsequent blood draw tested at .162%.

Dkt. No. 26-3 at 2-3.

On February 7, 2012, the State of Wisconsin charged the petitioner with a fifth offense of operating while intoxicated, a fifth or sixth offense of operating with a prohibited alcohol concentration level, taking and driving a vehicle without consent, criminal damage to property, hit and run and disorderly conduct. See State v. Zibolsky, Brown County Case No. 12CF163 (available at https://wcca.wicourts.gov).

    2.    *Plea hearing*

On September 4, 2012, the circuit court conducted a plea hearing. Zibolsky, Brown County Case No. 12CF163. Under a plea agreement, the petitioner pled no contest to the fifth offense of operating while intoxicated, and entered an Alford[2] plea to taking and operating a vehicle without the owner's consent. Dkt. No. 26-3 at 3. The court dismissed the remaining charges. Id.; see also Dkt. No. 26-2 at 18. The State agreed to limit its sentencing recommendation to two years of initial confinement and five years of extended supervision, allowing the petitioner to argue for a lesser sentence. Id. The

---

[2] When a defendant enters an Alford plea, he agrees to be sentenced but does not admit guilt. See North Carolina v. Alford, 400 U.S. 25 (1970). In Alford, the United States Supreme Court held that a "[a]n individual accused of a crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." Id. at 37.

3

petitioner's counsel told the court that he had considered a defense of not guilty by reason of mental disease or defect or involuntary intoxication, but that he and the petitioner had decided to resolve the case through the plea agreement. Id.

At the plea hearing, the court confirmed that the petitioner had reviewed the plea agreement with counsel, that counsel explained everything in the plea agreement to the petitioner and that the petitioner understood counsel's explanation of the plea agreement. Id. at 6. The court ordered a recess for the petitioner to confer with counsel to make sure the petitioner understood the entirety of the agreement. Id. at 6-7. The court considered the petitioner's mental health history and inquired into the petitioner's current medical prescriptions. Id. at 7-9. It confirmed that nothing about the petitioner's mental health or the effects of his medication interfered with his ability to understand his attorney when discussing the plea agreement, or with his ability to understand the court during the plea hearing. Id. at 10. The court told the petitioner to let the court know if his mental health or the effects of his medication began to interfere with his ability to understand during the hearing. Id.

The court confirmed that the petitioner was able to discuss the plea questionnaire and waiver of rights form with his counsel, and that he understood and agreed with the statements within them. Id. The court verified that the petitioner had discussed with his counsel and understood the elements of the offenses for which he was agreeing to enter Alford and no-

4

contest pleas, and that he agreed the State would be able to prove the elements of those offenses at trial. Id. at 11. The petitioner agreed that he had reviewed with counsel and understood the constitutional rights that he was waiving by entering his pleas. Id. at 12-13. The petitioner stated that he had entered his pleas intentionally and that he understood the court would find him guilty of the offenses. Id. at 13. The court confirmed that nobody had threatened the petitioner or promised him anything in exchange for his pleas. Id. at 14. It clarified that it was not bound by the sentencing recommendations in the agreement, and explained the maximum penalties. Id. at 14-15.

The petitioner stated that he had enough time to talk about his decision with his counsel, he had no questions causing him to change his mind, he had no further questions for his counsel or the court and there was nothing about the proceedings that he didn't understand. Id. at 15. The petitioner stipulated to the facts in the probable cause section of the complaint. Id. at 16. The court found that the complaint provided a factual basis for the elements of the offenses. Id. at 17. The petitioner's counsel said that he believed the petitioner's pleas were made freely, voluntarily, knowingly and intelligently. Id. The court accepted the petitioner's pleas:

> THE COURT: I'm going to rely on that representation, and [petitioner], I'm also going to rely not only on your answers today, but on your demeanor. You've been listening very carefully, you've been answering appropriately, I believe as honestly as you can about everything, you seem to understand what you're doing today, and I was a little concerned, I wanted to make sure that, with the medications and all, that you were understanding, and actually, you've been quite coherent and appropriate here. I'm also going to rely on your completion of the Plea Questionnaire and Waiver of Rights form, which you've indicated I can essentially accept verbatim

5

or as though we went through it on the record line by line, and also rely on my review of the file, based upon this entire record, I'm going to accept your pleas and adjudge you guilty in Count 1 of operating while intoxicated as a 5th offense and in Count 3 of operating motor vehicle without owner's consent. On motion of the state, Counts 2, 4, 5, and 6 will be dismissed but read in for purposes of sentencing.

Id. at 17-18.

### 3. *Sentencing*

On March 8, 2013, the court sentenced the petitioner to two years of initial confinement followed by three years of extended supervision on the operating while intoxicated count, and two years of initial confinement followed by three years of extended supervision on the taking and driving a vehicle without consent count. Dkt. No. 26-1 at 1. The court imposed the sentences consecutive to each other and to any other sentence. Id. The clerk entered an amended judgment of conviction on November 15, 2013. See Zibolsky, Brown County Case No. 12CF163.

### B. State Postconviction Proceedings

### 1. *No-merit report*

On August 1, 2014, the petitioner filed a notice of appeal. Id. On October 3, 2014, Assistant State Public Defender Steven Grunder filed a no-merit report in the Wisconsin Court of Appeals. Dkt. No. 26-2. Attorney Grunder's no-merit report considered whether the petitioner had knowingly, voluntarily and intelligently entered Alford and no-contest pleas to the offenses, and whether there was any basis to challenge the petitioner's sentences. Id. at 3. Grunder reproduced much of the plea and sentencing hearing transcripts. Id. at 5-22.

6

Grunder concluded that the record had provided a factual basis for the pleas, and that the petitioner had entered his pleas knowingly, voluntarily and intelligently. Id. at 24. He argued that the circuit court's "thorough inquiry" established the petitioner's understanding of the rights he was waiving and the nature of the charges and penalties he faced. Id. He explained that "[t]he court engaged in a lengthy colloquy with [the petitioner,] who had filled out a plea questionnaire/waiver of rights form with his attorney." Id. Grunder was satisfied that the probable cause section of the complaint and the stipulation from the parties provided factual bases for the offense. Id. at 24-25. He stressed that (1) "the court personally engaged [the petitioner] to ensure that [the petitioner] knew the rights he was waving, and the direct consequences of his pleas," (2) the court ensured that the petitioner was aware of the elements of the counts of conviction, (3) the petitioner and his counsel agreed that the probable cause section of the complaint provided a factual basis for the pleas, (4) the petitioner agreed that his counsel had explained the rights he was waiving, (5) the petitioner acknowledged that he was waiving those rights by pleading, (6) the petitioner agreed that the state could prove the elements of the offenses, (7) the petitioner confirmed his understanding of the plea questionnaire and (8) the court explained the applicable maximum and minimum penalties to the petitioner. Id. at 25-26.

Grunder concluded that any challenge to the petitioner's sentences "would be frivolous and without arguable merit." Id. at 27. He reasoned that the court's sentences were legal, based on accurate information and were not

7

unduly harsh. Id. He found no basis for a sentence modification. Id. He reiterated that both the petitioner and his counsel had stipulated to the facts alleged in the complaint. Id. Grunder concluded that the sentencing court had considered the relevant sentencing factors "at length" under state law. Id. at 29 (citing McCleary v. State, 49 Wis. 2d 263, 280-81 (Wis. 1971); State v. Gallion, 270 Wis. 2d 535 (Wis. 2004)).

### 2. *Wisconsin Court of Appeals order affirming judgment*

The petitioner did not respond to Grunder's no-merit report. Dkt. No. 26-3 at 1. On January 27, 2015, the Court of Appeals summarily affirmed the petitioner's convictions. Id. at 6. The court saw "no arguable manifest injustice upon which [the petitioner] could withdraw his pleas." Id. at 3 (citing State v. Duychak, 133 Wis. 2d 307, 312 (Wis. Ct. App. 1986)). The court reasoned that the sentencing court was aware that the petitioner "had mental health issues," and "made certain that [the petitioner] understood his constitutional rights, the elements of the offenses and the potential penalties." Id. The Court of Appeals concluded that the sentencing court had complied with every requirement for accepting a plea set forth in State v. Bangert, 131 Wis. 2d 246, 270-72 (Wis. 1986). Id. at 4-6. It ruled that "[e]ntry of valid no-contest or *Alford* pleas constitutes a waiver of all nonjurisdictional defects and defenses." Id. (citing Bangert, 131 Wis. 2d at 293). Conceding that the sentencing court had failed to give a statutorily required deportation warning, the Court of Appeals concluded that the error provided no basis for appeal because the presentence

8

investigation report indicated that the petitioner was born in Milwaukee. Id. at 5.

The court found no basis for challenging the sentencing court's discretion in imposing the petitioner's sentences. Id. It reasoned that (1) while the court's sentences totaled four years of initial confinement and six years of extended supervision, it could have given the petitioner twelve years of imprisonment and $20,000 in fines, (2) the petitioner and his counsel stipulated to prior offenses, which the presentence investigation considered, (3) the sentencing court considered the proper sentencing factors, and (4) the sentences were "not arguably so excessive as to shock public sentiment." Id. Finally, the court clarified that its "independent review" of the case revealed no additional potential appellate issue. Id.

### 3. *Further state court filings*

On April 10, 2017, the petitioner—representing himself—filed an "omnibus motion" in the Wisconsin Supreme Court. Dkt. No. 26-8. The petitioner stated that he was "transferring [his] case from §974.06 to Article III, section 2 of the United states Constitution, and petitioner brings this motion pursuant to goverment [sic] Federal description number of Native American: 437U000764)." Id. at 1. He contended that the Judiciary Act of 1789 gives federal courts authority to grant *habeas* relief to federal prisoners. Id. The petitioner stated that "[d]ue process of law, guaranteed by the fifth and fourteenth U.S.C.A. to the U.S. Constitution, demands fairness for individuals in legal procedures." Id. at 2. At the end of this document, the petitioner cited

9

"Commericial Corporate Code (102.8) and 103.9," stated "'soverign citizen' 'flesh and blood' (man) 'treaty'." Id. at 3. On May 3, 2017, the Wisconsin Supreme Court ordered that no action would be taken on the petitioner's "omnibus motion." Dkt. No. 26-9. The court construed the motion as "apparently seeking a writ of prohibition pursuant to Wis. Stat. §783.08." Id. It stated that it was unable to discern what the filing related to or the desired relief. Id.

On June 13, 2017, the petitioner—again representing himself—filed a document in the Wisconsin Supreme Court titled "Memorandum of law omnibus motion pursuant to Wis Stats §783.08: No. 2017XX534-CR). L.C." Dkt. No. 26-10. The document asserted that the circuit court and trial counsel failed to ensure that the petitioner's pleas were knowing, voluntary and intelligent. Id. at 3. He argued that the sentencing court had imposed an unconstitutional sentence. Id. at 4. He contended that the circuit court had failed to follow mandatory procedure at the plea hearing. Id. at 7. He stated that the circuit court had failed to determine his competency. Id. at 9-13. The petitioner argued that his trial counsel had performed ineffectively. Id. at 11-13. He asserted that Wisconsin had no jurisdiction over him because he is Native American. Id. at 14-17. Ten days later, the Wisconsin Supreme Court stated that no action would be taken on the petitioner's document. Dkt. No. 26-11. It explained that the petitioner's direct appeal "was remitted on March 4, 2015, so this court no longer has jurisdiction." Id. at 1.

On July 3, 2017, the petitioner filed two memoranda in the Wisconsin Court of Appeals. Dkt. No. 26-12. He argued that because he is a Native American, the Wisconsin courts lacked jurisdiction over him. Id. at 1-2. He asserted that the decision of investigating officers not to take DNA evidence at the crime scene constituted a due process violation. Id. at 3-4. Three days later, the petitioner filed a document stating that the Wisconsin Resource Center was detaining him against his will. Dkt. No. 26-13. The same day, the Wisconsin Supreme Court stated that it would not take action on the petitioner's documents because he had no appeal pending before the court. Dkt. No. 26-14.

On July 18, 2017, the petitioner filed a document titled "Memorandum" in the Wisconsin Supreme Court. Dkt. No. 26-18. He argued that because the court concluded that it had no jurisdiction to take action on his filings post-appeal, the Wisconsin Resource Center had no jurisdiction to detain him. Id. On July 19, 2017, the Wisconsin Supreme Court declined to take action on the July 18, 2017 Memorandum; it explained that it the petitioner had no pending appeal before the court and that the court was unable to discern what relief was being requested. Dkt. No. 26-19.

On July 20, 2017, the petitioner filed with the Wisconsin Supreme Court a "Motion to Vacate Judgment of Conviction and Plea With Prejeduce [sic]." Dkt. No. 26-20. He alleged that the circuit court and his trial counsel had failed to ensure that his pleas were voluntary and intelligent. Id. at 1. The petitioner argued that the circuit court had imposed an unconstitutional sentence. Id. He

11

concluded that his plea hearing was defective. Id. at 5. The petitioner asserted that counsel should have raised a defense based on mental disease or defect. Id. at 7. He argued that the court and trial counsel had failed to determine whether he was competent to stand trial. Id. at 7-9. The petitioner contended that the circuit court lacked jurisdiction over him because he is Native American. Id. at 11.

On August 23, 2017, the petitioner filed a "notice of appeal" in the Wisconsin Supreme Court. Dkt. No. 26-6. The notice stated that the petitioner was appealing from the judgment of conviction entered in Brown County Circuit Court, the 2014 appeal and the no-merit brief. Id. at 1. The petitioner "addresse[d] this notice of appeal based on: 'error in unobjected to instruction may be reviewed on appeal when error is so plain or fundamental as to affect substantial rights of defendant.'" Id. (citing Randolph v. State, 83 Wis. 2d 630 (Wis. 1978)). On December 4, 2017, the petitioner sent the Wisconsin Supreme Court a letter asking for its decision regarding his notice of appeal. Dkt. No. 26-7. Two weeks later, the Wisconsin Supreme Court sent the petitioner a letter stating that because the case had been closed since January of 2017, "any documents [he had] mailed since that time would have been placed in the court's closed case file with no action taken by the court." Id. at 2. The court explained that "[i]f it was [the petitioner's] intent to pursue Wisconsin Supreme Court review of this case with the submission of [his] August 22nd document, . . . parties have 30 days from the date of the Court of Appeals decision in which to file a petition for review." Id. The court stated that because that period

had expired more than two years earlier, it had no jurisdiction to review his document and take any action based on it. Id.

These are the only documents the petitioner filed with the Wisconsin Supreme Court; he did not file a petition for review following the Court of Appeals' acceptance of Attorney Grunder's no-merit brief. See Zibolsky, Brown County Case No. 12CF163.

C.    Federal *Habeas* Petition

On September 6, 2017, the petitioner filed a federal *habeas* petition. Dkt. No. 1. In the Grounds for Relief section of the petition, the petitioner wrote

> Vacate judgement of conviction, and plea with prejudice, waiver of preliminary hearing, due process, jurisdiction, Native American, over defected plea colloquy, ineffective assistance of counsel. Writ of habeas corpus due process. Jurisdiction, Native American and writs of assistance in support and highly relevant to writ of habeas corpus.

Id. at 8. An attached document alleged that the circuit court's plea colloquy was defective because the court failed to ascertain (1) "the extent of [the petitioner's] education and understanding of the proceedings," (2) "if [he] understood what the charges were and the elements to all those charges," (3) "if [he] was made aware of all constitutional rights he was waiving by informing him of all those rights," and (4) "if [he] had an understanding of the penalties on these charges and how extended supervision was not actually going to be counted as served until he was discharged from the constructive custody of the DOC." Dkt. No. 1-1 at 2-3. The petitioner argued that he did not knowingly, intelligently and voluntarily enter his plea. Id. at 4-5. He stated that his trial attorney rendered ineffective assistance for failing to argue that the petitioner

13

was not guilty by reason of mental disease or defect. Id. at 8. The petitioner said that his trial counsel failed to ask the court for a mental competency exam. Id. at 9. The petitioner contended that the state court had no jurisdiction over him because he is a Native American. Id. at 13-14.

On July 28, 2020, the court screened the petition under Rule 4 of the Rules Governing Section 2254 Cases. Dkt. No. 21. The court found that the petition alleged three claims: (1) a Fifth Amendment violation from the circuit court's allegedly defective plea colloquy and acceptance of a plea that was not knowing, voluntary and intelligent, (2) ineffective assistance of the attorney who represented the petitioner when entering his plea, and (3) lack of jurisdiction by the Wisconsin courts to prosecute the petitioner. Id. at 8. Although the court allowed the petitioner to proceed on Grounds One and Two, it expressed its concern as to whether the petitioner had sufficiently presented them to the Wisconsin courts and whether the petitioner had filed his federal *habeas* petition within the relevant limitation period. Id. at 10-11. The court did not allow the petitioner to proceed on Ground Three, finding that the State of Wisconsin had jurisdiction to criminally prosecute a member of a Native American tribe. Id. at 8-10.

At the end of its screening order, the court set a briefing schedule:

The court **ORDERS** that the parties must comply with the following schedule for filing briefs on the merits of the petitioner's claims:

(1) the petitioner has forty-five days after the respondent files the answer to file a brief in support of his petition;

(2) the respondent has forty-five days after the petitioner files his initial brief to file a brief in opposition;

14

(3) the petitioner has thirty days after the respondent files the opposition brief to file a reply brief, if he chooses to file such a brief.

If, instead of filing an answer, the respondent files a dispositive motion:

(1) the respondent must include a brief and other relevant materials in support of the motion;

(2) the petitioner then must file a brief in opposition to that motion within forty-five days of the date the respondent files the motion; (3) the respondent has thirty days after the petitioner files his opposition brief to file a reply brief, if the respondent chooses to file such a brief.

The parties must submit their pleadings in time for the court to receive them by the stated deadlines.

Id. at 11-12.

On October 1, 2020, the court extended the respondent's deadline to respond to the petition to the end of day on October 28, 2020. Dkt. No. 25. On October 22, 2020, the respondent answered the petition. Dkt. No. 26. The respondent argues that the petitioner did not exhaust state remedies, procedurally defaulted his claims and filed his federal *habeas* petition beyond the statutory limitation period. Id. While the court's briefing schedule gave the petitioner forty-five days—until December 6, 2020—to file a brief in support of the petition, the petitioner never did so.[3]

---

[3] The Wisconsin Department of Corrections locator web site shows that in September 2017, when the petitioner filed the federal *habeas* petition, he was in a "supervised living facility." https://appsdoc.wi.gov/lop/details/detail. The petition indicated that the petitioner was in the Wisconsin Resource Center. Dkt. No. 1 at 1. The WRC is a treatment facility for incarcerated persons in Wisconsin who need specialized mental health services. https://www.dhs. wisconsin.gov/wrc/index.htm. The web site shows that on December 19, 2017, the petitioner was released to extended supervision. https://appsdoc.wi.gov/

The respondent asserts that the petitioner did not exhaust his state remedies. Id. at 4-5. Noting that appellate counsel filed a no-merit report, the respondent stresses that the petitioner did not file a response in the Court of Appeals to the no-merit report or a petition for review in the Wisconsin Supreme Court. Id. at 2. The respondent explains that the petitioner "filed numerous documents in the Wisconsin Court of Appeals and the Wisconsin Supreme Court following remittitur," but "none developed into an appeal." Id. at 2-3. According to the respondent, the petitioner procedurally defaulted his claims when he did not fairly present them to the Wisconsin courts as federal constitutional claims. Id. The respondent argues that even if the petitioner fairly present his claims to the Wisconsin Court of Appeals, the court reasonably rejected those claims. Id. The respondent also contends that the petitioner's federal *habeas* petition is untimely. Id. at 6.

---

lop/details/detail. The petitioner advised the court in a brief filed December 14, 2017 that he was soon to be released and provided an "in care of" address in Oshkosh, Wisconsin. Dkt. No. 17. In February 2018, the court learned from the petitioner's probation officer that he was living in a shelter in Green Bay. On April 23, 2018, the petitioner provided the clerk's office with the address of the shelter, but also provided an alternative address in Manitowoc, Wisconsin. The court last heard from the petitioner in a brief he filed on January 16, 2019; that document does not include an address. Dkt. No. 20. The locator web site indicates that on September 5, 2019, the petitioner was admitted to the Brown County Jail on an alternative to revocation; he was released on March 18, 2020. https://appsdoc.wi.gov/lop/details/detail. The court has not heard from the petitioner since his release and he has not provided the court with an updated address.

## II.    Analysis

### A.    Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant *habeas* relief only if the state court decision was "either (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Miller v. Smith, 765 F.3d 754, 759-60 (7th Cir. 2014) (quoting 28 U.S.C. §§2254(d)(1), (2)). A federal *habeas* court reviews the decision of the last state court to rule on the merits of the petitioner's claim. Charlton v. Davis, 439 F.3d 369, 374 (7th Cir. 2006).

"'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Renico v. Lett, 559 U.S. 766, 773 (2010) (quoting Williams v. Taylor, 529 U.S. 362, 410 (2000)). Indeed, "[t]he 'unreasonable application' clause requires the state court decision to be *more* than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 71 (2003) (emphasis added). In other words, §2254(d)(1) allows a court to grant *habeas* relief only where it determines that the state court applied federal law in an "objectively unreasonable" way. Renico, 559 U.S. at 773. "A state court's determination that a claim lacks merit

17

precludes federal *habeas* relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." <u>Harrington v. Richter</u>, 562 U.S. 86, 102 (2011) (quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)). "The standard under § 2254(d) is 'difficult to meet' and 'highly deferential.'" <u>Saxon v. Lashbrook</u>, 873 F.3d 982, 987 (7th Cir. 2017) (quoting <u>Cullen v. Pinholster</u>, 563 U.S. 170, 181 (2011)).

    B.    <u>Exhaustion</u>

The respondent argues that the petitioner did not exhaust his state remedies. Under 28 U.S.C. §2254(b)(1)(A), a federal court cannot grant *habeas* relief unless the petitioner exhausts the available state-court remedies. Generally, a court considers a claim exhausted if a petitioner presents it through one "complete round of the State's established appellate review process." <u>Woodford v. Ngo</u>, 548 U.S. 81, 92 (2006) (citation omitted); <u>Hicks v. Hepp</u>, 871 F.3d 513, 530 (7th Cir. 2017). This includes presenting a claim to the state's highest court in a petition for discretionary review. <u>Id.</u>

State-court remedies are considered "exhausted" when they are no longer available, regardless of the reason for their unavailability. <u>Ngo</u>, 548 U.S. at 92-93. If

> state-court remedies are no longer available because the prisoner failed to comply with the deadline for seeking state-court review or for taking an appeal, those remedies are technically exhausted . . . but exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead, if the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in federal habeas proceeding.

18

Id. (citing Gray v. Netherland, 518 U.S. 152, 161 (1996); Coleman v. Thompson, 501 U.S. 722, 744-51 (1991)).

Under Wis. Stat. §808.10(1), a decision of the Wisconsin Court of Appeals is reviewable by the Wisconsin Supreme Court only upon a petition for review granted by the Supreme Court, and the petition must be filed in the Wisconsin Supreme Court within thirty days of the Court of Appeals decision. The Court of Appeals affirmed the petitioner's convictions on January 27, 2015. Dkt. No. 26-3. At that point, the petitioner had an unexhausted and available state-court remedy: he had until February 26, 2015 to file a petition for review in the Wisconsin Supreme Court.

The petitioner never filed a petition for review—not before February 26, 2015 and not after. He did not file anything with the Wisconsin Supreme Court until April 2017—over two years after the deadline for filing a petition for review. Dkt. No. 26-8. That said, once the February 26, 2015 deadline had passed, seeking review in the Wisconsin Supreme Court no longer was a remedy available to the petitioner. As the United States Supreme Court explained in Ngo, at that point, this state-court remedy technically was exhausted because it was unavailable, "regardless of the reason for [its] unavailability." Ngo, 548 U.S. at 92-93. For this reason, the court must conclude that the petitioner has met the statutory requirement that he exhaust his state-court remedies before filing his federal *habeas* petition.

19

C.     Procedural Default

Even if a petitioner meets the statutory requirement that he exhaust his

state-court remedies, however,

> "[a] habeas petitioner who has failed to meet the State's procedural
> requirements for presenting his federal claims has deprived the state
> courts of an opportunity to address those claims in the first
> instance." *Coleman*, 501 U.S. at 732. [Courts] therefore require a
> prisoner to demonstrate cause for his state-court default of *any*
> federal claim, and prejudice therefrom, before the federal habeas
> court will consider the merits of that claim. *Id.*, at 750 . . . . The one
> exception to that rule . . . is the circumstance in which the habeas
> petitioner can demonstrate a sufficient probability that [the court's]
> failure to review his federal claim will result in a fundamental
> miscarriage of justice. *Ibid.*

Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

"Inherent in the habeas petitioner's obligation to exhaust his state court

remedies before seeking relief in habeas corpus, is the duty to fairly present his

federal claims to the state courts." King v. Pfister, 834 F.3d 808, 815-16 (7th

Cir. 2016) (quoting Lewis v. Sternes, 390 F.2d 1019, 1025 (7th Cir. 2004)); see

also O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999). "Fair presentment

requires assertion of a federal claim through 'one complete round of state-court

review,' which means that 'the petitioner must raise the issue at each and every

level in the state court system, including levels at which review is discretionary

rather than mandatory.'" King, 834 F.3d at 815 (quoting Lewis, 390 F.3d at

1025-26).

Where a petitioner has not fairly presented his claims to the state courts,

the federal court considers the claims procedurally defaulted and does not

address their merits. Hicks, 871 F.3d at 531 (citing Lombardo v. United States,

Case 2:17-cv-01204-PP   Filed 11/10/22   Page 20 of 28   Document 27

860 F.3d 547, 555 (7th Cir. 2017)). Again, if a petitioner procedurally defaulted on a claim, a federal *habeas* court generally cannot review that claim. <u>Ngo</u>, 548 U.S. at 93 (citing <u>Gray</u>, 518 U.S. at 162 (1996); <u>Coleman</u>, 501 U.S. at 744-51 (1991)). A procedural default bars a federal court from granting *habeas* relief unless a petitioner demonstrates cause for the default and resulting prejudice, or that a miscarriage of justice would result if the court did not address his claim on the merits. <u>Perruquet</u>, 390 F.3d at 514.

The petitioner did not assert the claims he has raised in this federal *habeas* petition through one complete round of state-court review. He never filed a response to the no-merit brief in the Court of Appeals or a petition asking the Wisconsin Supreme Court to review the adoption of that no-merit report by the Court of Appeals.

D.    <u>Statute of Limitations</u>

Even if the petitioner could show cause for his defaults and resulting prejudice, his federal *habeas* petition is untimely. AEDPA provides a one-year limitation period for a petition seeking federal *habeas* relief. 28 U.S.C. §2244(d)(1). That one-year period begins to run from the latest of four events:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly

recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2244(d)(1)(A)-(D).

The petitioner has not claimed that any state action created an impediment to filing that later was removed; he has not claimed a right newly recognized by the United States Supreme Court, or that his *habeas* claims are based on newly discovered evidence. That leaves §2244(d)(1)(A), which provides that the one-year period begins to run from the date the petitioner's convictions became final by the conclusion of direct review or the expiration of the time for seeking such review. The Wisconsin Court of Appeals affirmed the petitioner's convictions on January 27, 2015. Dkt. No. 26-3. The petitioner did not file a petition for review in the Wisconsin Supreme Court. His time for doing so expired thirty days after the Court of Appeals' order affirming his convictions. See Wis. Stat. §808.10(1). His one-year limitations period for filing a federal *habeas* petition began the day that time expired—on February 26, 2015. Gonzalez v. Thaler, 565 U.S. 134, 150 (2012) ("with respect to a state prisoner who does not seek review in a State's highest court, the judgment becomes "final" under § 2244(d)(1)(A) when the time for seeking such review expires[.]"). The petitioner's time for filing his federal *habeas* petition expired one year later, on February 26, 2016. The petitioner did not file this *habeas* petition until September 6, 2017—one and a half years after the limitation period had expired.

22

Neither party has addressed the doctrines of statutory or equitable tolling. The court will briefly address each.

      1.    *Statutory Tolling*

           a.    Standard

"The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section." 28 U.S.C. §2244(d)(2). An application is pending for purposes of §2254(d)(2) "as long as the ordinary state collateral review process is 'in continuance'—i.e., 'until the completion of' that process. In other words, until the application has achieved final resolution through the State's post conviction procedures, by definition it remains 'pending.'" <u>Carey v. Saffold</u>, 536 U.S. 214, 219-20 (2002) (quoting Webster's Third New International Dictionary 1669 (1993)). "An application is 'filed' . . . when it is delivered to, and accepted by, the appropriate court officer for placement into the official record." <u>Artuz v. Bennett</u>, 531 U.S. 4, 8 (2000). "For statutory tolling to apply, the state post-conviction motion must be 'properly filed.'" <u>Ray v. Clements</u>, 700 F.3d 993, 1003 (7th Cir. 2012). "That determination is governed by state procedural law." <u>Id.</u> (citing <u>Bennett</u>, 531 U.S. at 8).

An application for post-conviction relief is "properly filed" under AEDPA "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings," such as "the form of the document, the time limits upon its delivery to the court and office in which it must be lodged, and the

requisite filing fee." <u>Bennett</u>, 531 U.S. at 8 (collecting cases). The fact that the state court imposed a procedural bar does not necessarily mean that the petition was not "properly filed." <u>Bennett</u>, 531 U.S. at 9 ("the question whether an application has been 'properly filed' is quite separate from the question whether the claims contained in the application are meritorious and free of procedural bar"). It is a "condition to filing, as opposed to a condition to obtaining relief," that must be satisfied to be eligible for tolling under AEDPA. <u>Id.</u> at 11. "If a state court accepts and entertains the petition on its merits, it has been 'properly filed,' but if the state court rejects it as procedurally irregular, it has not been 'properly filed.'" <u>Johnson v. McCaughtry</u>, 265 F.3d 559, 564 (7th Cir. 2001) (citing <u>Freeman v. Page</u>, 208 F.3d 572, 576 (7th Cir. 2000)). A petition filed in the wrong state court does not toll the statute of limitations. <u>Bennett</u>, 531 U.S. at 8; see also <u>McCaughtry</u>, 265 F.3d at 564-65.

b. Application

Statutory tolling does not apply in the petitioner's case. After the Court of Appeals affirmed the petitioner's convictions on January 27, 2015, he did not file anything until May 20, 2016. <u>See</u> <u>Zibolsky</u>, Brown County Case No. 12CF163. That filing—a "Demand for discovery"—came almost three months after the limitation period had expired on February 26, 2016.

2. *Equitable Tolling*

a. Standard

28 U.S.C. §2244(d) allows for equitable tolling of the statute of limitations. <u>Holland v. Florida</u>, 560 U.S. 631 (2000). A petitioner is entitled to

24

equitable tolling upon demonstrating that (1) he pursued his rights diligently, and (2) some extraordinary circumstance stood in his way that prevented timely filing. Id. at 649. Equitable tolling is available only when a petitioner establishes both "elements" of Holland. Menominee Indian Tribe of Wis. v. U.S., __ U.S. __, 136 S. Ct. 750, 755 (2016). The burden of establishing equitable tolling grounds rests with the petitioner. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). "[T]o qualify for equitable tolling, [the petitioner] ha[s] to demonstrate that he was reasonably diligent in pursuing his rights throughout the limitations period and until he finally filed his untimely habeas petition." Carpenter v. Douma, 840 F.3d 867, 870 (7th Cir. 2016). If a petitioner does not act diligently after the extraordinary circumstance ends and within the time remaining of the period of limitations, equitable tolling is unavailable. Pace, 544 U.S. at 418-19 (petitioner did not act diligently when he waited four years to file a state *habeas* petition after the claims became available and five months after his state proceedings became final before filing a federal *habeas* petition). The diligence prong "covers those affairs within the litigant's control; the extraordinary-circumstances prong, by contrast, is meant to cover matters outside its control." Menominee Indian Tribe, 136 S. Ct. at 756. "[T]he second prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary and beyond its control." Id.

"[T]he threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." Lombardo, 860 F.3d at 551 (quoting United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir. 2000)). However, equitable

Case 2:17-cv-01204-PP   Filed 11/10/22   Page 25 of 28   Document 27

tolling is a "'flexible' standard;" it is not a search for "a single trump card," but "an evaluation of the entire hand that the petitioner was dealt." Socha v. Boughton, 763 F.3d 674, 686 (7th Cir. 2014). Equitable tolling does not excuse a late federal *habeas* petition "simply because [the petitioner] was unable to obtain a complete trial transcript before he filed his §2254 petition." Lloyd v. Van Natta, 296 F.3d 630 (7th Cir. 2002).

b.    Application

The petitioner does not qualify for equitable tolling. The record shows no extraordinary circumstance that prevented him from timely filing his federal *habeas* petition. The petitioner's numerous state court filings show that he knew how to file a court case. (In fact, prior to the September 2017 filing of this *habeas* petition, the petitioner had filed four civil rights lawsuits in this district. Zibolsky v. Brown County Jail, *et al.*, Case No. 03-cv-920; Zibolsky v. Olsen, Case No. 16-cv-1140; Zibolsky v. Brookins, *et al.*, Case No. 17-cv-1090; and Zibolsky v. Johnson, Case No. 17-cv-1196.) Nor did the petitioner diligently pursue his rights. He did not file a response to Attorney Grunder's no-merit report. He did not file a petition asking the Wisconsin Supreme Court to review the Court of Appeals' decision adopting that no-merit report. He did not file anything for over a year after the Court of Appeals affirmed his convictions.[4]

---

[4] Between October 3, 2014, when Grunder filed the no-merit report, and January 2015, when the Court of Appeals adopted the report, the petitioner was in a supervised living facility—presumably WRC or another mental health facility. https://appsdoc.wi.gov/lop/details/detail.

Because the petitioner never filed a petition for review in the Wisconsin Supreme Court, he procedurally defaulted his claims. Because he filed his federal *habeas* petition one and a half years after his convictions became final, the petition is untimely. This court cannot rule on merits of the petition.

## III.    Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the court must consider whether to issue a certificate of appealability. See also 28 U.S.C. §2253(c)(1). This requirement exists because "[a] state prisoner whose petition for a writ of *habeas corpus* is denied by a federal district court does not enjoy an absolute right to appeal." Buck v. Davis, ___ U.S. ___, 137 S. Ct. 759, 773 (2017). This court may issue a certificate of appealability only if the petitioner makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Peterson v. Douma, 751 F.3d 524, 528 (7th Cir. 2014) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)). The court declines to issue a certificate of appealability because no reasonable jurist could debate the petitioner's procedural default or untimeliness.

## IV.    Conclusion

The court **DISMISSES** the petition for writ of *habeas corpus*. Dkt. No. 1.

The court **ORDERS** that this case is **DISMISSED**. The clerk will enter judgment accordingly.

The court **DECLINES** to issue a certificate of appealability.

Dated in Milwaukee, Wisconsin this 10th day of November, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**